**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
_____
                               :
DAVID BATTLE,                  :
                               :  Civil Action No. 07-1160 (SDW)
            Petitioner,        :
                               :
      v.                       :        O P I N I O N
                               :
MICHELLE RICCI,                :
                               :
            Respondent.        :
_____:
```

**APPEARANCES:**

> DAVID BATTLE, #301830
> New Jersey State Prison
> Trenton, New Jersey  08625
> Petitioner pro se

> PAULA T. DOW, Essex County Prosecutor
> SARA A. FRIEDMAN, Essex County Assistant Prosecutor
> Office of Essex County Prosecutor
> Essex County Veterans Courthouse
> Newark, New Jersey  07102
> Attorneys for Respondent

**Susan D. Wigenton,** District Judge

Petitioner DAVID BATTLE (hereinafter "Petitioner") filed an Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254(a) (hereinafter "Petition"), Docket Entry No. 7, challenging his judgment of conviction rendered by the Superior Court of New Jersey, Law Division, Essex County. See Pet. ¶1.  Respondent filed an answer (hereinafter "Answer"), arguing that the Petition should be dismissed on the merits.  See Docket Entry No. 12.  Petitioner

responded by filing a motion for evidentiary hearing (hereinafter "Motion"), see Docket Entry No. 16, which Responded opposed.  See Docket Entry No. 17.  For the reasons expressed below, the Court denies the Petition and Petitioner's motion for evidentiary hearing, and declines to issue a certificate of appealability.  See 28 U.S.C. §§ 2253(c), 2254(a), (b), (c).

I.  **BACKGROUND**

Petitioner challenges a judgment of conviction entered on May 27, 1998, in the Superior Court of New Jersey, Law Division, Essex County, after a jury convicted him of murder, illegal possession of a handgun, possession of a handgun with an intent to use it unlawfully against another person, and possession of a handgun by a person with a prior conviction.  See Pet. ¶¶ 1-4.  The Law Division sentenced Petitioner to life, plus twenty years, imprisonment.  See id. ¶ 3.  Petitioner appealed to the Appellate Division of the Superior Court of New Jersey, which affirmed affirmed his conviction on November 17, 1999.  See id. ¶ 9.  On February 29, 2000, the Supreme Court of New Jersey denied Petitioner certification.  See id.  Apparently, Petitioner filed three state petitions for post conviction relief (hereinafter "PRC").  The procedural history of Petitioner's three PRCs, as well as the facts of his criminal conviction, were summarized by the Appellate Division as follows:

[Petitioner] filed his first petition for post-conviction relief . . . claiming that the assistance provided by his counsel was ineffective on the ground that counsel did not adequately investigate his alibi . . . , nor did the attorney call witnesses who allegedly would support his theory of the case. [Petitioner] also alleged that his counsel's assistance was ineffective because of cumulative errors. In a subsequent [PRC] petition, [Petitioner] sought a new trial based on an alleged recantation by the eyewitness to the murder.  In the third PCR petition, [Petitioner] sought access to the victim's clothing to test for gunshot residue.  All relief was denied by the [Law Division, and these decisions were affirmed by the Appellate Division.

The underlying facts of Petitioner's conviction were as follows:] Mid-morning on November 12, 1995, seventeen-year-old Corey Bey, the victim, and Valerie Hicks, who were distant cousins, were at the premises of 160 Spruce Street in Newark.  Corey Bey was selling drugs and Valerie Hicks was trying to buy drugs to get high. [Petitioner] entered the lobby of the building and became engaged in an argument with the victim over the sale of drugs.  Valerie Hicks had known [Petitioner] for about five years.  [Petitioner] left the building going around the back and heading toward Barkley Street.  Five to ten minutes later Valerie Hicks saw [Petitioner] coming around from the back of the building with his hand in his pocket.  Valerie Hicks was standing near the side door of the building.  The victim had gone around to the front of the building, but as he came back to the side lobby, [Petitioner] grabbed the victim's shirt at the back of the neck and threatened to shoot him.  At that point "Corey squirmed and tried to get away.  He didn't get away.  [Petitioner] just shot, started shooting him like 5, 6 times for nothing."  [After that, Petitioner] ran around the back of the building and jumped into a gray car that was parked on Barkley Street. . . . The victim was lying in the side entrance between the first and second doors into the building. [Alerted by Hicks, the victim's mother and] uncle . . . arrived. [The victim, in his two dying declaration made to his uncle, identified Petitioner as his murderer.]

State v. Battle, 2006 WL 1735553 (N.J. Sup. Ct. App. Div. June 27, 2006), cert. denied, 189 N.J. 426 (2007).

Petitioner raises four Grounds in his Petition, and re-summarizes his allegations in support of these Grounds in his Motion. Specifically, he states:

GROUND ONE:    Trial counsel was ineffective because of her failure to investigate and present an alibi defense.

Pet. ¶ 12(A). Petitioner make the following allegations in support of that Ground:

> The victim was shot in Newark, New Jersey, around 10:30 AM on Saturday, November 12, 1995.[1]  Around the same time, Petitioner a/k/a Humphrey Gordon[2] and Twanna Battle, his [sister-in-law, the wife of Robert Battle, Petitioner's bother who was serving his own term of imprisonment,] left Petitioner's home, near the building where the victim was shot, to visit Robert Battle at the Essex County Jail . . . .  The trip to the jail took about 30 minutes, and Petitioner and Twanna than went through a lengthy pre-visiting processing.  Jail records confirm that Robert Battle was visited by Twanna Battle and Humphrey Gordon on November 12, 1995, between 12:30 PM and 3:30 PM.

Mot. at 5, accord Pet. at 6-7.

GROUND TWO:    Trial Counsel was ineffective because of her failure to call Twanna Battle as a witness.

Pet. ¶ 12(B).  In support of that Ground, Petitioner alleges as follows:

---

[1]
Petitioner errs as to the day of November 12, 1995, since that date was a Sunday, not Saturday.

[2]
"When Petitioner was arrested, he had in his possession a driver license with his photo and the name Humphrey Gordon.  Later, Petitioner was indicted under the name Humphrey Gordon, among other" Petitioner's aliases.  Mot. at 2, n.2.

4

> Wanda Cheesboro, Petitioner's girlfriend at the time of the charged crimes, testified that, on November 12, 1995, Petitioner told her that he had an argument with someone. Petitioner then left his home and drove away, while Cheeseboro followed in a car driven by Twanna Battle. Cheeseboro eventually exited the car and walked a short distance from it and was able to see Petitioner walking from the building in which the victim was shot. Battle, who stayed in the car, was not in the position to see Petitioner. Two hours later Petitioner told Cheeseboro that he shot someone. Battle, however, would have testified that Cheeseboro never exited the car[,] and that Battle and Cheeseboro drove to Petitioner's home where Battle picked up Petitioner to start their journey to the Essex County Jail . . . to visit Petitioner's brother, where Petitioner was at the time [when he] allegedly made his confession to Cheeseboro.

Mot. at 3; _accord_ Pet. at 5.

GROUND THREE:   Trial counsel was ineffective because of her failure to call an expert witness.

Pet. ¶ 12(A).   Petitioner make the following supporting allegations:

> Valerie Hicks . . . testified that Petitioner took his left hand and grabbed the victim by the collar, while Petitioner, with the gun in his right hand, shot the victim 5, 6 times. Although the victim squirmed to get away, he was not able to. In her statement to the police, Hicks estimated that one foot was the distance between the gun and the victim. Prior to the trial, however, . . . a firearm and ballistic expert, after examining the victim's clothing, concluded that the distance from which the shots were fired . . . exceeded the one-foot distance estimated by Hicks [_i.e.,_ the experts suggested the distance of three-four feet].

Mot. at 4; _accord_ Pet. ¶ 12(C).   Finally, as his Ground Four, Petitioner asserts that the above-listed Grounds One, Two and Three, if read jointly, indicate that his trial counsel committed

such errors that, cumulatively, amounted to ineffective assistance of counsel and deprived him of a fair trial. See Pet. ¶ 12(D).

## II.   **STANDARD OF REVIEW**

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128 F.3d 152, 159 (3d Cir. 1997). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982). "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable. It is unnecessary in such a situation to inquire whether the prisoner preserved his claim before the state courts."

Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982).   "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997).   Moreover, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citation omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

A district court must give deference to determinations of state courts. Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996).   Federal courts "must presume that the factual findings of both state trial and appellate courts are correct, a presumption that can only be overcome on the basis of clear and convincing evidence to the contrary." Stevens v. Delaware Correctional Center, 295 F.3d 361, 368 (3d Cir. 2002).   Where a federal claim was "adjudicated on the merits" in state court proceedings, § 2254 does not permit habeas relief unless adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

7

28 U.S.C. § 2254(d).

A decision is "'contrary to' a Supreme Court holding if the state court 'contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

Under the "'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable. Id. at 409-10. Finally, the court must begin the analysis by determining the relevant clearly established law. See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

III.  **DISCUSSION**

   A.  **Ineffective-Assistance-of-Counsel Test**

   The Court of Appeals for the Third Circuit recently summarized

the applicable substantive test as follows:

   In Strickland, the Supreme Court articulated a
   two-pronged test for ineffective assistance of counsel
   claims. [See] 466 U.S. 668 [(1984)]. A habeas petitioner
   must show "(1) that counsel's representation fell below
   an objective standard of reasonableness; and (2) that
   there is a reasonable probability that, but for counsel's
   error, the result would have been different." United
   States v. Nino, 878 F.2d 101, 103 (3d Cir. 1989) [relying
   on Strickland].

   1.  Objective Reasonableness

        Strickland and its progeny make clear that
        counsel's strategic choices will not be
        second-guessed by post-hoc determinations that a
        different trial strategy would have fared better.
        [See] 466 U.S. at 689. However, there is a
        prerequisite to this rule's application. Only
        choices made after a reasonable investigation of the
        factual scenario are entitled to a presumption of
        validity. Id. at 690-91. "Strategic choices made
        after less than complete investigation are
        reasonable precisely to the extent that reasonable
        professional judgments support the limitations on
        investigation." Id. Thus, [the court's] inquiry
        must begin by assessing the objective reasonableness
        of [the attorney's decision as to whether to offer
        a certain theory of the case or whether to call a
        certain witness]. Failure to conduct any pretrial
        investigation is objectively unreasonable. [See,
        e.g.], United States v. Gray, 878 F.2d 702, 711 (3d
        Cir. 1989).  . . .

   2.  Prejudice

        In order to show Strickland prejudice, [the
        petitioner] must show that there is "a reasonable
        probability that, but for counsel's unprofessional
        errors, the result of the proceeding would have been
        different." Strickland, 466 U.S. at 694. [The Court

of Appeals] ha[s] defined a reasonable probability
as a probability "sufficient to undermine confidence
in the outcome." Hull v. Kyler, 190 F.3d 88, 110
(3d Cir. 1999). [Thus, the petitioner's] "showing
may not be based on mere speculation about what the
witnesses [or the theories] that counsel failed [to
present or to call] might have [suggested or] said."
Gray, 878 F.2d at 712. Rather, it must be made
based on the potential witness's testimony to the
habeas court.[See id.] Furthermore, in considering
whether a petitioner suffered prejudice, "the effect
of counsel's inadequate performance must be
evaluated in light of the totality of the evidence
at trial: 'a verdict or conclusion only weakly
supported by the record is more likely to have been
affected by errors than one with overwhelming record
support.'" Id. at 710-711 (quoting Strickland, 466
U.S. at 696).

Rolan v. Vaughn, 445 F.3d 671, 681-82 (3d Cir. 2006).


B.   **Petitioner's Challenges**

   1.   **Alleged Failure to Present an Alibi**

In his Ground One, Petitioner suggests a theory of his
criminal case seemingly based on the following alibi-diving chain
of reasoning: if (a) the victim was shot at 10:30 A.M., and (b)
Petitioner and Twanna Battle visited Robert Battle in jail from
12:30 to 3:30 P.M., and (c) the jail was about a 30 minute-drive
from Petitioner's place of residence, then (d) Petitioner could not
have been at the place of the victim's shooting, because (e)
Petitioner and Twanna Battle underwent "lengthy pre-visiting
processing" in the jail where they visited Robert Battle and,
hence, were in jail when the shooting took place. See Mot. at 5;
Pet. at 6-7.  Since such theory of his case was not presented by

his counsel, Petitioner alleges that the counsel both failed to investigate his alibi and failed to present it.

The state court, examining this allegation, concluded as follows:

> In this matter, it is abundantly clear that trial counsel made a tactical determination to exclude the alibi defense.  The time factor eluded to in defendant's affidavit presented an obvious obstacle to the alibi's validity.  The murder had occurred at about 10:30 a.m. The defendant estimates that that was about the time Tuwana Battle picked him up to visit his brother in the Caldwell Annex of the Essex County Jail.  Defendant states it took approximately 30 minutes to reach their destination. However, even in light of the clarification of the visitor's log submitted in support of this position, the earliest defendant can conclusively prove he was at the jail is 12:30, two hours after the murder. In addition, the visitation record from the Essex County Jail Annex does not reflect that David Battle visited Robert Battle on November 12, 1995.  As such, the visitation card does nothing to support the alibi and [moreover,] may only become evidentiary if the defendant can prove that he was the Humphrey Gordon indicated on the record.

Ans., Ex. 7T25-12 to 7T26-7; accord Ex. 7T29 (reflecting the trial court observation that, "[i]t is clear that trial counsel took the time to conduct an investigation with respect to [Twanna] Battle as there is incontrovertible proof that an interview was conducted prior to the trial.")  So concluding, the state court dismissed Petitioner's allegation currently presented as his Ground One.

This Court agrees with the state court's determination. Indeed, nothing in Petitioner's allegations suggest that his counsel actually failed to investigate Petitioner's now-prompted theory of the case: Petitioner's claim to that effect is based

merely on the fact that his counsel elected not to employ that theory.[3]   However, an informed decision not to employ a certain theory does not violate the Supreme Court's precedent set forth in Strickland, 466 U.S. at 690-91, and Petitioner post factum belief that he would have fared better under that theory do not amount to a claim cognizable under the Strickland test.

Moreover, the attorney's decision not to rely on Petitioner's "alibi" theory appears entirely reasonable.  First, Petitioner's alibi, by definition, required a factual determination that: (a) the "pre-visiting proceedings" in Essex County Jail on November 12, 1995, extended over the period notably exceeding an hour and a half, and (b) the person who visited Robert Battle on that day was, in fact, Petitioner himself (acting under his Humphrey Gordon alias) rather than another person carrying a certain form of identification issued in the name of Humphrey Gordon.  This Court recognizes that Petitioner's trial counsel might have called Twanna and Robert Battle as Petitioner's witnesses to establish the aforesaid prerequisite fact.  However: (a) neither the state court record nor Petitioner's allegations reflect any statement by Twanna Battle specifying the actual waiting time that she incurred during

---

[3]

Moreover, the record indicates that Petitioner's counsel indeed contacted Twanna Battle prior to the trial.  See Ans., Ex. N, at 16.  Furthermore, Twanna Battle was served with "on-call" subpoena, see Ans., Ex. M, Da48, which indicates that Petitioner's counsel considered but rejected the idea of using the information provided by Twanna Brown.

her visit of Robert Battle on November 12, 1995, and Petitioner's definition of the waiting time (corresponding, presumingly, to Twanna Battle's definition) is limited to the term "lengthy" (which might very well be under hour and a half), and (b) Robert Battle's statement that Petitioner visited him in Essex County Jail around noon (<u>i.e.</u>, two and a half hours prior to the recorded time, and also two and a half hours prior to the time when the jail was actually open for visitation), <u>see</u> Ans., Ex. M, Da 40, ¶1, directly contradict the official records. Therefore, it is highly unlikely that testimonies by these witnesses would have established the prerequisite fact that Twanna Battle and her companion actually spent at least an hour and a half in pre-visitation jail proceedings.[4] Therefore, it was indeed reasonable for Petitioner's counsel not to pursue the "alibi" theory now proffered by Petitioner.

---

[4]
Furthermore, any introduction of Petitioner's "alibi" theory would be of doubtful value, since the jury might have easily concluded that Petitioner either: (a) intentionally hurried to the jail, an official institution keeping visitation records, in hope to create himself an "alibi" for the shooting; or (b) did not actually visit Robert Battle on November 12, 1995, but--upon learning that Twanna Battle was accompanied during that visit by a certain person who registered at the jail as Humphrey Gordon, simply acquired a false identification issued in the same name but having Petitioner's photograph, all in order to create himself an "alibi." Finally, Petitioner's counsel might have simply wished to downplay the fact that Petitioner was not merely using multiple aliases but also had false documents corresponding such aliases, since the counsel's stressing of such fact might have painted Petitioner, a person already having previous convictions, as a "professional criminal."

Consequently, the Court finds the determination reached by the state courts a proper application of the <u>Strickland</u> principle and concludes that Petitioner's counsel's alleged "failure to investigate and present an alibi defense" was, in reality, a result of the counsel's proper exercise of informed discretion. Such exercise of discretion was wholly justified under the <u>Strickland</u> test, and will not be second-guessed by this Court. Therefore, Petitioner's Ground One claim will be dismissed.

### 2. Alleged Failure to Call Twanna Battle as Witness

Petitioner's Ground Two alleges that Twanna Brown, if called as a witness in Petitioner's criminal case, could have given testimony offsetting the effect of the statements made by Wanda Cheeseboro, Petitioner's ex-girlfriend. <u>See</u> Mot. at 3; Pet. at 5.

Petitioner does not appear to contest the correctness of the first part of Cheeseboro's testimony, <u>i.e.</u>, that: (a) Petitioner informed Cheeseboro on November 12, 1995, about his argument with someone on the same day, (b) Petitioner left Cheeseboro and Battle and drove in the direction of both Petitioner's residence and the place of the shooting; and (c) Cheeseboro and Twanna Battle drove in the same direction shortly thereafter in Twanna Battle's car. <u>See</u> <u>id.</u> Petitioner, however, contests the truthfulness of Cheeseboro's remaining testimony, <u>i.e.</u>, that: (a) she stepped out of Twanna Battle's car and, after a short walk, saw Petitioner

14

running from the place of shooting; and (b) two hours after the shooting, Petitioner told her that he shot "that kid."  See id., accord Ans. Ex. 2T109-22 to 2T110-9.  According to Petitioner, Twanna Battle would have testified that Cheeseboro: (a) did not exit Twanna Brown's car until they reached Petitioner's residence, where Petitioner got into Twanna Brown's car and started en route to Essex Couty Jail; and (b) could not have been told by Petitioner that he shot "that kid" at the time estimated by Cheeseboro because, at that time, Petitioner was, allegedly, with Twanna Battle visiting Robert Battle in jail.[5]  See Mot. at 3; Pet. at 5. Consequently, Petitioner asserts that his counsel's decision not to call Twanna Battle as a witness to offset Cheeseboro's testimony amounted to ineffective assistance of counsel.

Addressing that allegation, the state court concluded as follows:

> [Twanna Battle's statements would] produced little, if any, information to bolster [Petitioner's] theory of the case. Specifically, [Twanna] Battle stated that she did drive . . . Cheeseboro[] in the vicinity of the murder scene and further that [Petitioner] was visibly [upset] upon returning to his residence.  Therefore, it cannot be said that the information procured from [Twanna] Battle prior to the trial was so significant that the failure to introduce her testimony deprived [Petitioner] of a fair

---

[5]     Petitioner does not specify when and where, according to his version of events, did Cheeseboro leave Twanna Battle's car.  See generally, Pet., Mot.  However, Since Petitioner maintains that he, under his alias Humphrey Gordon, visited Robert Battle only in the company of Twanna Battle, the Court presumes that--according to Petitioner's version of events--Cheeseboro left Twanna Battle's car when Petitioner entered it, i.e., at Petitioner's residence.

> trial.  Indeed, the introduction of [Twanna] Battle's
> testimony[,] as it was presented in the pretrial
> interview[,] could have been argued in and of itself as
> an error which would have deprived [Petitioner] of
> effective assistance of counsel.

Ans., Ex. 7T29-18 to 7T30-8.  This Court agrees.  Indeed, a statement by Twanna Battle that Petitioner was, in the morning of November 12, 1995, in close vicinity of the murder scene, especially coupled with Twanna Battle's statement that Petitioner was visibly upset at the time when she picked him up en route to the jail, could have been more of an injury than of an advantage to Petitioner's case, since the statement would have added one more eye-witness placing Petitioner in the victim's murder scene, plus availed Petitioner's jury to a testimony about his "visibly upset" mental state at the time close to that of shooting.[6]

Since the record indicates that Petitioner's trial counsel duly interviewed Twanna Brown and issued her an "on-call" witness

---

[6]

As for Petitioner's claim that Twanna Battle's statement would have offset the effect of Cheeseboro's testimony that Petitioner confided in Cheeseboro about the shooting, the claim appears to be greatly attenuated since: (a) the time-based conflict to which Petitioner alludes would necessarily be valid only upon a proof that Petitioner was in fact the very "Humphrey Gordon" who visited Robert Battle in jail, which, as the discussion provided in the previous section illustrates, might have been either unprovable proposition or that, which could have been presented to the jury at a notable injury to Petitioner's criminal case; and (b) even if Twanna Battle's testimony caused the jury to doubt Cheeseboro's estimation of time, this doubt might have had no effect whatsoever on the jury's opinion as to whether Cheeseboro correctly remembered the *content* of such significant statement as Petitioner's confession to murder.

16

subpoena, this Court finds that Petitioner's counsel made an informed and objectively reasonable choice not to call Twanna Battle: lack of her testimony did not prejudice Defendant's case. The Court, therefore, declines Petitioner's invitation to second-guess his counsel's strategy and will dismiss his Ground Two claim. See Strikland, 466 U.S. 668.

### 3.   Alleged Failure to Call an Expert Witness

Petitioner's Ground Three claim, alleging that his counsel was ineffective because the counsel did not call a ballistics expert witness, follows from Petitioner's challenge to the testimony provided by Valerie Hicks. See Mot. at 4; accord Pet. ¶ 12(C). As noted supra, Hicks testified that Petitioner shot the victim either five or six times while holding on to the victim's collar, which indicated a shooting from a close distance, i.e., about one foot. However, the ballistics expert, after eventually examining the victim's clothing, concluded that the distance from which the shots were fired could have been about three to four feet. See id. Hence, Petitioner seemingly alleges that: (a) an introduction of the expert's testimony would have discredited Hick's eye-witness testimony in view of her inability to correctly assess the distance between the gun and the victim's body; and (b) the decision of Petitioner's counsel not to call such witness amounted to ineffective assistance of counsel.

These allegations are factually unwarranted for a number of reasons. First, Petitioner's counsel, in fact, attempted the aforesaid tactic of discrediting Hicks' testimony and sought production of the victim's clothing, although without success. See Ans., Ex. 6T3-8 to 6T3-16; accord Ex. 6T17-16 to 6T19-12 (reflecting denial of Petitioner's counsel's application and the court's opinion that it did not make "a lot of difference whether the shooting was from one foot [or] three feet"). Second, Hicks never testified that *all* shots were executed from the same one-foot distance, see 6T6-21 to 22, she merely described the closeness of the victim and Petitioner's bodies engaged in the altercation, which allowed for one or a few shots being fired from one-foot distance, while the others from the distance exceeding one foot (especially in view of Hick's statement that the victim was squirming in hope to get away from Petitioner). See Ex. 6T17-16 to 6T19-12 (reflecting the same observation by the state court).

Moreover, the victim's autopsy report, see Ans., Ex. M, Da12, indicated that the gun-shot wounds ran from the victim's neck down throughout his body, and then to his knee. Hicks' testimony allows an interpretation that the gun was held at one-foot distance only when Petitioner shot the victim's neck, i.e., the area not covered by clothing. Therefore, the expert's examination of gun-powder residue of victim's clothes would not be able to

18

establish falsity of Hick's testimony, since the pattern of all other victim's wound indicated that Petitioner kept shooting down the victim's body (increasing the distance between the firearm and the entry wounds), and thus Hicks' statement would have been entirely consistent with--rather than contradicted by--a ballistics expert's report that the gun-powder residue on the victim's clothes revealed a three-to-four-feet shooting distances.

Therefore, Petitioner's Ground Three allegations will be dismissed as factually unfounded and substantively without merit.

### 4.   Alleged Cumulative Errors

For the purposes of the Sixth Amendment challenge, the habeas court must determine whether the cumulative effect of counsel's errors prejudiced the petitioner within the meaning of Strickland. See Berryman v. Morton, 100 F.3d 1089, 1101-02 (3d Cir. 1996); see also Lindstadt, 239 F.3d at 204.  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691.  In order to merit habeas relief, "the defendant must show that the deficient performance prejudiced the defense." Id. at 687. The "prejudice" component of the Strickland test focuses on "the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v.

Fretwell, 506 U.S. 364, 372 (1993) (citing Strickland, 466 U.S. at 687).  The level of prejudice the petitioner must demonstrate lies between prejudice that "had some conceivable effect" and prejudice that "more likely than not altered the outcome of the case." Strickland, 466 U.S. at 693.  Therefore, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional [cumulative] errors, the result of the proceeding would have been different."  Id. at 694.  The Supreme Court has defined "reasonable probability" as one that "undermine[s] confidence in the outcome."  Id.

Similarly, even if none of the claims on their own amounts to a constitutional violation, the "cumulative effect of the alleged errors may violate due process."  Sullivan v. Cuyler, 631 F.2d 14, 17 (3d Cir. 1980).  In Marshall v. Hendricks, the Court of Appeals for the Third Circuit evaluated a cumulative error claim and found:

> Here, even were we to cumulate all the claimed errors and superimpose them over the extensive trial proceedings, given the quantity and quality of the totality of the evidence presented to the jury, we could not conclude that the New Jersey Supreme Court unreasonably applied Supreme Court precedent or unreasonably determined the facts in making its ruling.

307 F.3d 36, 94 (3d Cir. 2002), cert. denied, 538 U.S. 911 (2003). Guided by the principle articulated in Strickland and Marshall, this Court finds that Petitioner suffered no ineffective assistance of counsel and no deprivation of his due process rights,

even if his counsel's performance included certain strategic misjudgments, since the effect of these misjudgments was harmless. A review of the case record reveals that the counsel's assistance was diligent, and her exercise of strategic discretion was reasonable.  Petitioner's trial was fair, and the verdict was supported by ample evidence.  Indeed, the statements made by Hicks, an eye-witness who knew Petitioner, read in the context of corresponding testimony by Cheeseboro and, especially, in light of the victim's dying declarations (twice identifying Petitioner to the victim's uncle as the victim's shooter), indicate that Petitioner's challenges in the instant Petition reflect nothing but Petitioner's post-trial second-guessing of his counsel's strategy and an unfounded hope that a handful of faint doubts "here and there" (obtained at a potential disadvantage to Petitioner's defense) might have made a dent in the abundance of evidence presented by the prosecution.  However, Petitioner's challenges, read against the totality of evidence in Petitioner's criminal case, do not "undermine confidence in the outcome."  In sum, Petitioner has not demonstrated that the strategic decisions made by his counsel either prejudiced him or resulted in a decision that was based on an unreasonable determination of the facts. Accordingly, Petitioner's Ground Four will be dismissed.

## IV.  CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue.   See Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by Petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).


## V.  CONCLUSION

Based on the foregoing, the Court will dismiss the Petition with prejudice and decline to issue a certificate of appealability under 28 U.S.C. § 2253(c).  Petitioner's motion for evidentiary hearing will be denied as moot.  An appropriate Order accompanies this Opinion.


                              /s/ **SUSAN D. WIGENTON**
                          **United States District Judge**

Dated: **February 6ᵗʰ  2008**